## Richmond

### DANNY LEE WOMACK v. ROSALIE ELDRIDGE.

December 2, 1974.

Record No. 730653.

Present, All the Justices.

*William M. McClenny (McClenny Associates,* on brief), for plaintiff in error.

*Wm. Rosenberger, Jr. (Richard E. Spies,* on brief), for defendant in error.

I'Anson, C.J., delivered the opinion of the court.

Plaintiff, Danny Lee Womack, instituted this action against the defendant, Rosalie Eldridge, to recover compensatory and punitive damages for mental shock and distress allegedly caused by the defendant's willful, wanton, malicious, fraudulent and deceitful acts and conduct toward him. The question of punitive damages was stricken by the trial court and the jury returned a verdict for the plaintiff in the amount of $45,000. The trial court set aside the verdict *non obstante veredicto* on the ground that there could be no recovery for emotional distress in the absence

of "physical damage or other bodily harm." We granted plaintiff a writ of error. Defendant did not assign cross-error, although the record shows she excepted to many rulings in the court below and several of them are relied upon in her brief and argument before us.

Plaintiff assigned numerous errors, but the controlling question is whether one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress absent any bodily injury.

The evidence shows that defendant had been engaged in the business of investigating cases for attorneys for many years. She was employed by Richard E. Seifert and his attorney to obtain a photograph of the plaintiff to be used as evidence in the trial of Seifert, who was charged with sexually molesting two young boys. On May 27, 1970, about 8 a.m., defendant went to plaintiff's home and upon gaining admittance told him that she was a Mrs. Jackson from the newspaper and that she was writing an article on Skateland. Defendant asked plaintiff, who was a coach at Skateland, if she could take a picture of him for publication with the article, and he readily consented.

Shortly thereafter defendant delivered the photograph to Seifert's counsel while he was representing Seifert at his preliminary hearing. Seifert's counsel showed plaintiff's photograph to the two young boys and asked if he was the one who molested them. When they replied that he was not, counsel withdrew the photograph and put it in his briefcase. However, the Commonwealth's Attorney then asked to see the photograph and requested additional information about the person shown in it. Defendant was then called to the stand and she supplied the plaintiff's name and address. Plaintiff's photograph in no way resembled Seifert, and the only excuse given by defendant for taking plaintiff's picture was that he was at Skateland when Seifert was arrested. However, the offenses alleged against Seifert did not occur at Skateland.

The Commonwealth's Attorney then directed a detective to go to plaintiff's home and bring him to court. The detective told plaintiff that his photograph had been presented in court; that the Commonwealth's Attorney wanted him to appear at the proceedings; and that he could either appear voluntarily then or he would be summoned. Plaintiff agreed to go voluntarily. When

called as a witness, plaintiff testified as to the circumstances under which defendant had obtained his photograph. He also said that he had not molested any children and that he knew nothing about the charges against Seifert.

A police officer questioned plaintiff several times thereafter. Plaintiff was also summoned to appear as a witness before the grand jury but he was not called. However, he was summoned to appear several times at Seifert's trial in the circuit court because of continuances of the cases.

Plaintiff testified that he suffered great shock, distress and nervousness because of defendant's fraud and deceit and her wanton, willful and malicious conduct in obtaining his photograph and turning it over to Seifert's attorney to be used in court. He suffered great anxiety as to what people would think of him and feared that he would be accused of molesting the boys. He had been unable to sleep while the matter was being investigated. While testifying in the instant case he became emotional and incoherent. Plaintiff's wife also testified that her husband experienced great shock and mental depression from the involvement.

The precise issue presented on this appeal has not been decided by this court.

In the recent case of *Hughes* v. *Moore*, 214 Va. 27, 31, 197 S.E.2d 214, 219 (1973), where we also clarified *Bowles* v. *May*, 159 Va. 419, 437-38, 166 S.E. 550, 557 (1932), we held that when conduct is merely negligent, not willful, wanton or vindictive, and physical impact is lacking, there can be no recovery for emotional disturbance alone. However, where emotional disturbance is accompanied by physical injury there may be a recovery for negligent conduct, notwithstanding the lack of physical impact, provided the injured party proves by clear and convincing evidence a causal connection between the negligent act, the emotional disturbance and the physical injury.

We have also said that a recovery is permitted for mental distress and physical injuries unaccompanied by actual physical contact where the injuries were caused by a willful, intentional tort. *Moore* v. *Jefferson Hospital, Inc.*, 208 Va. 438, 441, 158 S.E.2d 124, 127 (1967).

The case of *Awtrey* v. *Norfolk & W. Ry. Co.*, 121 Va. 284, 93 S.E. 570 (1917), relied upon by the defendant, is distinguishable on the facts from the present case. There, liability was based on

a negligent wrongful act; here, liability is based on willful, wanton, fraudulent and deceitful conduct.

Courts from other jurisdictions are not in accord on whether there can be a recovery for emotional distress unaccompanied by physical injury. However, most of the courts which have been presented with the question in recent years have held that there may be a recovery against one who by his extreme and outrageous conduct intentionally or recklessly causes another severe emotional distress.[1] Annot., 64 A.L.R.2d 100, § 8 at 120, and the many cases there cited.

The Restatement (Second) of Torts, § 46 at 71, provides:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

In comment (i) to the Restatement it is expressly stated that this rule also covers a situation where the actor knows that distress is certain, or substantially certain, to result from his conduct.

A great majority of cases allowing recovery for such a cause of action do so when the act was intentional and the wrongdoer desired the emotional distress or knew or should have known that it would likely result. *Aetna Life Insurance Co.* v. *Burton*, 104 Ind.App. 576, 580, 12 N.E.2d 360, 362 (1938); *Kirksey* v. *Jernigan*, 45 So.2d 188, 189 (Fla. 1950); *Boyle* v. *Chandler*, 33 Del. 323, 329, 138 A. 273, 276 (1927); *Samms v. Eccles*, 11 Utah 2d 289, 293, 358 P.2d 344, 346-47 (1961); Prosser on Torts, "Infliction of Mental Distress," § 12 at 60 (4th ed. 1971).

In *Samms*, the Supreme Court of Utah aptly stated:

"... [T]he best considered view recognizes an action for severe emotional distress, though not accompanied by bodily impact or physical injury, where the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, *or*, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the

---

1. Our research reveals that at least 26 jurisdictions permit such causes of action, while apparently 7 do not.

generally accepted standards of decency and morality." (Footnote omitted; emphasis added.) 11 Utah 2d at 293, 358 P.2d at 346-47.

We adopt the view that a cause of action will lie for emotional distress, unaccompanied by physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement (Second) of Torts, *supra*, at 77.

In the case at bar, reasonable men may disagree as to whether defendant's conduct was extreme and outrageous and whether plaintiff's emotional distress was severe. Thus, the questions presented were for a jury to determine. A jury could conclude from the evidence presented that defendant willfully, recklessly, intentionally and deceitfully obtained plaintiff's photograph for the purpose of permitting her employers to use it as a defense in a criminal case without considering the effect it would have on the plaintiff. There is nothing in the evidence that even suggests that plaintiff may have been involved in the child molesting cases. The record shows that the only possible excuse for involving the plaintiff was that Seifert was arrested at the place where plaintiff was employed. A reasonable person would or should have recognized the likelihood of the serious mental distress that would be caused in involving an innocent person in child molesting cases. If the two boys had hesitated in answering

that the man in the photograph was not the one who had molested them, it is evident that the finger· of suspicion would have been pointed at the plaintiff.

■ Defendant contended in her brief, and in oral argument before us, that the trial court erred in granting instruction 1-A in that it was contradictory and misled the jury; that the amount of damages fixed by the jury was excessive; and that the action of the Commonwealth's Attorney in causing plaintiff's name to be revealed was an intervening cause which absolved her of any liability.

We will not consider those contentions because defendant did not assign cross-error. *Beasley* v. *Barnes*, 201 Va. 593, 598, 113 S.E.2d 62, 65 (1960); *Blue Ridge Poultry and Egg Co., Inc.* v. *Clark*, 211 Va. 139, 141, 176 S.E.2d 323, 325 (1970); Rule 5:7, Rules of Court.

For the reasons stated, the judgment of the court below is reversed, the jury verdict reinstated, and final judgment hereby entered for the plaintiff.

> *Judgment reversed, jury verdict reinstated, and final judgment.*