922 F.2d 835
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Glada M. HENDERSON, Plaintiff-Appellant,
v.
FOOD LION, INC., Defendant-Appellee.
Glada M. HENDERSON, Plaintiff-Appellant,
v.
FOOD LION, INC., Defendant-Appellee.
 Nos. 90-2048, 90-2076.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 1, 1990.
Decided Jan. 7, 1991.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., District Judge. (CA-89-687-N)
 Robert Vincent Roussos, Roussos & Ford, Norfolk, Va., for appellant.
 Robert William McFarland, McGuire, Woods, Battle & Boothe, Norfolk, Va., for appellee.
 E.D.Va.
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 Before PHILLIPS, Circuit Judge, BUTZNER, Senior Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PHILLIPS, Circuit Judge:
 
 
 1
 Glada Henderson appeals the dismissal by summary judgment of her state law claims against Food Lion, Inc. for defamation and intentional infliction of emotional distress by Food Lion employees. We affirm dismissal of the intentional infliction of emotional distress claim, but reverse dismissal of the defamation claim and remand that claim for further proceedings.
 
 
 2
 * This case arises from an incident of mistaken identity and its unfortunate consequences.[1] Glada Henderson was standing in a check-out line in a Food Lion store where she was approached by Art Cash, a Food Lion security guard. The guard thought that he recognized her as a woman who earlier had been barred from the store for changing the marked prices on merchandise. Having checked with the store manager, the guard approached Henderson in the check-out line to accost her with his belief. He said to her, "Don't you remember the talk we had?" When Henderson denied ever talking to him, he said, "You do too remember," and asked her to step away from the line. Before she stepped away, Cash said to her that she was the woman who had "signed a paper not to come back in [the store] anymore." When Henderson denied this and asked to see any paper she had signed, Cash twice remarked "now you want to do it the hard way." When asked what this meant, he responded, "Go downtown."
 
 
 3
 Cash then escorted Henderson away from the check-out line and took her to Michael Warren, a store manager who, for the first time, asked her name. When she gave her name as Glada Henderson, the manager indicated some disbelief, observing that if Henderson wasn't "the one," then she "had a twin." Following this discussion, Henderson was allowed to leave the store.
 
 
 4
 Some time later store manager Warren called Henderson, conceded that there had been a mistake in identifying her as the woman earlier barred from the store, and apologized.
 
 
 5
 Henderson then brought this action in Virginia state court, alleging state law claims of defamation and intentional infliction of emotional distress arising from the conduct of Cash and Warren. Food Lion removed the case to federal district court on diversity grounds and, following discovery, moved for summary judgment. Based on the pleadings and discovery materials, the district court granted summary judgment as to both claims.
 
 
 6
 On the defamation claim, the court concluded that as a matter of law there had been no showing of publication to any third party of any allegedly defamatory speech by Food Lion employees. The court also declined to find a properly pleaded claim under Virginia's "insulting words" statute, Va.Code Sec. 8.01-45 (Michie 1984), despite Henderson's suggestion that the complaint should be so construed, or, later, that she should be allowed to amend to make the claim explicit.
 
 
 7
 As to the intentional infliction of emotional distress claim, the court concluded that as a matter of law on the summary judgment record, none of the Food Lion employees' conduct as described by Henderson rose to the level of outrageousness required to establish such a claim under Virginia law.
 
 
 8
 This appeal followed.
 
 II
 
 9
 We first consider Henderson's contention that the district court erred in dismissing by summary judgment her defamation claim.
 
 
 10
 This contention has two prongs. The first is that Henderson's complaint should be construed, as pleaded, to state a claim under Virginia's "insulting words" statute, in addition to a common law claim for defamation by slander. Because an insulting words claim does not require publication, but only the utterance to a plaintiff of words having a sufficiently "insulting" quality, any failure to raise an issue of publication is immaterial. See Carwile v. Richmond Newspapers, 82 S.E.2d 588, 591 (Va.1954) (publication not necessary in insulting words claim).
 
 
 11
 The other prong of the contention is that, contrary to the court's conclusion, there were genuine issues of material fact as to whether publication had occurred, making it also error to have dismissed her claim if considered as embracing only slander.
 
 
 12
 We consider these in turn, and agree with Henderson on both points.
 
 
 13
 * As indicated, Henderson argued at the summary judgment hearing that her complaint should be construed to embrace a statutory "insulting words" claim as well as a common law defamation by slander claim, thereby saving that particular defamation claim from dismissal for want of a sufficient showing of publication.
 
 
 14
 The district court rejected this argument, relying on an old line of Virginia cases which apparently required that to proceed on both these "defamation" claims, they must be separately and specifically pleaded. See, e.g., Sun Life Assurance Co. v. Bailey, 44 S.E. 692 (Va.1903).
 
 
 15
 Henderson later made another effort to save this claim by moving conditionally, in conjunction with a motion to reconsider the grant of summary judgment, for leave to amend specifically to plead the "insulting words" claim. The district court declined to permit an amendment, but specifically noted that the dismissal was "without prejudice" as to any claim under the insulting words statute.
 
 
 16
 We conclude that the district court erred in declining either to treat Henderson's defamation claim as one which, as pleaded, sufficiently stated an insulting words cause of action, or to permit an amendment to state such a claim if that was thought necessary. The primary error, and one which might well be dispositive, was the court's perception that the complaint should be construed under state pleading requirements. Instead, as the court seemed at times to recognize, once the action was removed, the complaint should have been construed, whether for sufficiency or other purposes, under the liberal notice pleading requirements of the federal rules. See Fed.R.Civ.P. 81(c). Under those requirements, it is almost certain that the complaint should have been construed as alleging claims both of common law slander and of "insult" under Virginia law. See id. 8(a), (e)(2). Under such a construction, the insulting words claim was not subject to dismissal on the ground relied upon by the district court--want of publication. An amendment to the complaint, though it might have been required by the court following removal if thought helpful, see id. 81(c) ("repleading" not necessary unless required by court), probably was not necessary to save the claim from dismissal.
 
 
 17
 Though probably not necessary to save the claim as pleaded, once Henderson expressly sought leave to "replead" in order to allege the claim specifically, leave certainly should have been granted. At this early stage in the litigation, no possible prejudice could have resulted to the defendant from the allowance of such an amendment; under the circumstances it would have been only a technical one that added no factual element to the defamation by slander claim of which the defendant obviously was already on plain notice. See id. 15(a); Ward Electronics Serv. v. First Commercial Bank, 819 F.2d 496 (4th Cir.1987). Indeed, the court seemed to recognize that fairness dictated a dismissal which would leave Henderson free to prosecute such a claim in another action.[2]
 
 
 18
 At this point, nothing is to be gained by our requiring such a purely technical amendment to accomplish the end result to which Henderson is entitled. Instead, we will simply hold that the complaint should upon remand be considered to have stated a claim under Virginia's insulting words statute in addition to a claim for defamation by slander.
 
 B
 
 19
 As indicated, the district court dismissed Henderson's defamation claim, construed as embracing only slander, on the basis that, assuming the defamatory nature of the employees' speech, there was no showing of its publication to a third party. See The Gazette, Inc. v. Harris, 325 S.E.2d 713, 720 n. 1 (Va.1985) (requirement of publication to third party stated and applied). We agree with Henderson that summary judgment as to the slander claim was not warranted on this basis, because there were genuine issues of material fact respecting whether publication had occurred.
 
 
 20
 We note preliminarily that the district court's dismissal by summary judgment on this basis was probably caused in large part by Henderson's counsel's failure properly to respond to Food Lion's motion for summary judgment. Food Lion supported its motion by appending selected portions of Henderson's deposition which tended to suggest that no one but Cash and Warren overheard any of the allegedly defamatory statements made by either. In particular, Food Lion appended and relied upon a portion in which Henderson described her concluding conversation with Warren in Cash's presence. Asked whether anyone was then "around" besides the two employees, Henderson responded only that "[p]eople was walking by shopping." J.A. at 82. Asked later whether "anyone was standing by" when Warren allegedly had said that Henderson was the culprit and that if she wasn't, she "had a twin," Henderson responded "Mr. Cash," and when asked, "[a]nyone else?," responded "I don't think so." Id. at 83.
 
 
 21
 At the time of the district court's hearing on the summary judgment motion, Henderson's deposition had not been filed, and her counsel did not specifically bring to the court's attention other portions of the deposition much more favorable to her on the publication issue. In particular, counsel did not bring specifically to the court's attention a portion in which Henderson described her initial encounter with Cash at the check-out counter. This included the following critical passages in which Henderson, under examination by counsel for Food Lion, described the conversation and the context in which it occurred.
 
 
 22
 Q. Why don't you tell me what happened with respect to the incident that's the subject of this lawsuit.
 
 
 23
 A. Well, I went up to check out, and I was checking out, and this man right there--
 
 
 24
 Q. You are referring to the man on my left, Mr. Cash?
 
 
 25
 A. That's right. He took hold of my arm and said, "Don't you remember the talk that we had?"
 
 
 26
 And I said, "No. Who are you?" And he wouldn't tell me.
 
 
 27
 And he said, "You remember it, don't you?"
 
 
 28
 And I said, "I've never seen you before in my life."
 
 
 29
 And he said, "You do to [sic] remember."
 
 
 30
 And I said, "I sure don't."
 
 
 31
 And then he said, "Step over here." But before he told me to step over there, he told me that I had signed a paper not to come back in there anymore. So I said, "I didn't, not me."
 
 
 32
 And he said--
 
 
 33
 Q. You said what?
 
 
 34
 A. I said I didn't do that.
 
 
 35
 Q. All right.
 
 
 36
 A. And so he told me to step over there, and he said if I wasn't the one that did that, why did the manager say you were, and I said I didn't know.
 
 
 37
 Q. What else happened?
 
 
 38
 A. I just got real nervous and I asked him to let me see the paper.
 
 
 39
 And he said, "Now you want to do it the hard way." So then I asked him again and he said, "Now you want to do it the hard way."
 
 
 40
 And I said, "What's the hard way?"
 
 
 41
 And he said, "Go downtown." And then he went and took me over to Mr. Warren, the gentleman there (indicating).
 
 
 42
 ....
 
 
 43
 Q. Let me make sure I'm following you. You were at the cash register when Mr. Cash initially approached you?
 
 
 44
 A. Yes.
 
 
 45
 Q. Was there anyone next to you at that point?
 
 
 46
 A. There was people behind me and people all around.
 
 
 47
 Q. Did Mr. Cash come up and speak to you in a loud voice?
 
 
 48
 A. Everybody heard him.
 
 
 49
 Q. Everybody heard him?
 
 
 50
 A. I'm sure they did. Embarrassed me to death.
 
 
 51
 Q. Why do you say everybody heard him?
 
 
 52
 A. Well, he was talking loud enough so they could hear him.
 
 
 53
 Q. Did anyone say anything to you?
 
 
 54
 A. No, but they was sure looking at me.
 
 
 55
 J.A. at 27-30.
 
 
 56
 Though not made explicit in the court's memorandum opinion granting summary judgment, it is apparent from the hearing transcript that the court's focus in assessing the evidence of publication understandably was on the concluding encounter between Henderson, Warren and Cash. We agree that if that were the only evidence of publication, summary judgment for Food Lion was proper. But, as Henderson's counsel later realized, this was not all that might properly have been considered. Recognizing that Henderson's earlier testimony about the initial encounter with Cash had not properly been presented for the court's consideration, Henderson moved for reconsideration of the court's grant of summary judgment, now specifically referencing that earlier testimony.
 
 
 57
 Though, as the district court noted, it need not consider this belatedly referenced summary judgment material, see Fed.R.Civ.P. 56(e), it nonetheless did so. Indicating that it had now considered Henderson's entire deposition, the court "remain[ed] of the opinion that [Henderson] had failed to set forth a cause of action for common-law defamation." J.A. at 200. On this basis, the motion for reconsideration was denied.
 
 
 58
 This last ruling of the district court, from which appeal also was taken, raises another procedural problem for us. In it, the court seems to have shifted from its earlier holding that publication had not been shown, to a holding, perhaps an alternative one, that as a matter of law nothing that Cash was claimed to have said to Henderson during their first encounter was defamatory. J.A. at 200 & n. 2.
 
 
 59
 Under the circumstances, we think we must (1) review the district court's ultimate grant of summary judgment (including denial of the motion for reconsideration) on the basis of the whole of Henderson's deposition testimony, and (2) consider that the ultimate ruling was on alternative grounds: that nothing assertedly said by either Cash or Warren was defamatory, and in any event was not published.
 
 
 60
 Reviewed on that basis, we conclude that summary judgment was not warranted. Genuine issues of fact exist with respect both to the defamatory content of Cash's speech during his initial encounter with Henderson and the publication to third parties of that speech.
 
 
 61
 Whether the words assertedly spoken by Cash to Henderson were defamatory in the particular context that was described by Henderson raises issues both of law and fact. Whether they were capable of conveying a particular meaning and whether that meaning was defamatory are issues of law for the court. See generally Restatement (Second) of Torts Sec. 614(1). Whether words capable of such a meaning were so understood by third person hearers is an issue of fact. Id. Sec. 614(2). Here, though the district court's discussion is sketchy, it appears that the court thought the words attributed to Cash were as a matter of law not capable of a defamatory meaning. See J.A. at 200 n. 2. We disagree with that assessment. In the particular context--a store customer being accosted in a store by one apparently asserting some sort of authority--the attributed words clearly could convey a meaning that implied some kind of wrongdoing sufficiently egregious to warrant enforcement of an earlier imposed ban on access to the store. As a matter of law, such a meaning would be defamatory. Whether any third person who heard the words in this context so understood them remains a genuine issue of fact on the present record.
 
 
 62
 Similarly, as the district court seems to have realized, see id., once Henderson's testimony about the circumstances of the encounter are taken into account, it is plain that there is a genuine issue of fact respecting whether in the first place any third persons heard Cash's words to her. That Henderson has not specifically identified any such hearer is immaterial to the issue's existence. Critical is her testimony that "everybody heard him"; that she was "sure they did"; that "he was talking loud enough so they could hear him"; that though no one said anything to her, "they was sure looking at me." J.A. at 29, 30.
 
 
 63
 Accordingly, we hold that there exist genuine issues of material fact respecting whether Cash's words to Henderson during their initial encounter (1) were heard by any third persons and, if so, (2) were understood by any who heard them to have the defamatory meaning above identified. We agree with the district court that as a matter of law there was not publication of any defamatory words that may later have been spoken in the concluding conversation with store manager Warren.
 
 III
 
 64
 We agree with the district court's grant of summary judgment to Food Lion on the intentional infliction of emotional distress claim. Specifically we agree with the court's assessment that as a matter of law, Henderson's forecast of evidence failed to show that the conduct of Cash and Warren was either intentional or reckless, or sufficiently outrageous, to meet the test of Womack v. Eldridge, 210 S.E.2d 145, 148 (Va.1974). At most, the evidence, considered in the light most favorable to Henderson, would only support an inference of negligence on the part of these two employees. Furthermore, considered in total context, their conduct simply did not rise to the level of outrageousness contemplated by Virginia's stringent test for imposing liability on this claim. See, e.g., Ruth v. Fletcher, 377 S.E.2d 412 (Va.1989) (deliberate misrepresentation that plaintiff had fathered defendant's child, followed by recantation in order to rescind visitation rights, does not meet test).
 
 IV
 
 65
 For the above reasons, we affirm the district court's grant of summary judgment as to Henderson's claim of intentional infliction of emotional distress, but reverse the grant of summary judgment as to plaintiff's defamation claim and remand the latter claim for further proceedings. On remand, the complaint shall be deemed amended to allege a defamation claim under the Virginia insulting words statute, Va.Code Sec. 8.01-45, as well as a claim of common law defamation by slander. The slander claim may be maintained only as to words spoken by Food Lion employee Cash, and not as to any spoken by Food Lion employee Warren.
 
 
 66
 In remanding for further proceedings as to these two claims, we express no opinion as to whether any words spoken by either Cash or Warren constituted "insulting words" under the Virginia statute; nor as to what words may actually have been spoken by either Cash or Warren at any time.
 
 
 67
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 Our account of the facts is given in light of the summary judgment standard applicable both in the district court and on our review: that the summary judgment materials are to be assessed in the light most favorable to the non-movant, Henderson, with all inferences drawn favorably to her, and with credibility of favorable testimony assumed, etc. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.1979)
 We note in this connection, however, that most of the critical facts recounted are undisputed except in minor detail.
 
 
 [2]
 Of course, the dismissal without prejudice would operate only to save the claim against preclusion under res judicata principles; it would not save from a statute of limitations defense which, the defendant asserts in brief, is available here