# CIRCUIT COURT OF FAIRFAX COUNTY

Keith A. Martin

v.

Bruce Elliotte

June 5, 1998

Case No. (Law) 160440

BY JUDGE GERALD BRUCE LEE

This matter came before the Court on Defendant Bruce Elliotte's Motion to Strike the Plaintiff's Evidence and for entry of judgment in favor of the Defendant. The issue presented is whether the Defendant is liable for intentional infliction of emotional distress or negligent infliction of emotional distress for engaging in an adulterous affair with the Plaintiff's wife while simultaneously providing the Plaintiff, his friend, with advice about how to save his marriage.

Plaintiff, Keith A. Martin, contends that the Defendant is liable in tort under the facts of this case. Specifically, Plaintiff contends that Defendant is liable for intentional infliction of emotional distress or negligent infliction of emotional distress for intentionally misleading him with advice about saving his marriage, while sneaking into Plaintiff's home at night to have sexual relations with Plaintiff's wife as Plaintiff and his children slept upstairs in the marital residence. Plaintiff contends that as a result of his discovery of Defendant's adulterous affair with Plaintiff's wife and betrayal of their friendship, Plaintiff suffered severe emotional distress that impacted his health and his business. Plaintiff testified at trial that he did not file this lawsuit against his former "friend," the Defendant, for money, but he did so to vindicate his feelings and to hold the Defendant accountable for his actions.

Defendant contends that he is not civilly liable for his admitted affair with Plaintiff's wife because such causes of action are barred by the Virginia Heart Balm Statute, § 8.01-220 of the 1950 Code of Virginia, as amended.

Defendant further denies that the Plaintiff suffered legally cognizable emotional distress such as to fall outside of the proscription of the Virginia Heart Balm Statute. Alternatively, Defendant contends that the Plaintiff's evidence of intentional infliction of emotional distress or negligent infliction of emotional distress is insufficient as a matter of law and that the Defendant's motion to strike at the close of Plaintiff's evidence should be granted.

After consideration of the evidence at trial, the parties' arguments, and the authorities cited therein, the Court grants Defendant's Motion to Strike, vacates the verdict in favor of the Plaintiff, and enters judgment in favor of the Defendant. The Defendant's Motion to Strike is granted for the reasons that follow.

## I. *Factual Background*

The evidence viewed in the light most favorable to the Plaintiff at the close of the evidence is recited in the Factual Background.

Plaintiff and Defendant and their respective spouses were close friends and next door neighbors. As couples, they frequently socialized and vacationed together. The parties often spent time in each other's homes. In fact, each had a key to the other's home and could enter the other's home freely. The parties' children also freely moved in and out of the others homes. Plaintiff and Defendant and their spouses had a bond of friendship and trust.

One day in October 1996, Plaintiff's wife unexpectedly asked him for a divorce. Stunned by his wife's sudden decision to seek a divorce, Plaintiff sought out his "friend," the Defendant, to talk about the shocking news and what he should do. Initially, Defendant expressed dismay at the situation. Defendant then offered to talk to Plaintiff's wife to see if he could find out the cause of her discontent and to encourage her to preserve the marriage. Defendant told Plaintiff that he would suggest marital counseling to Plaintiff's wife.

Plaintiff and his wife pursued marital counseling together, and, from December 1996 until February 1997, Plaintiff pursued marital counseling individually. However, Plaintiff testified that he was still depressed by the idea of a divorce and the possible loss of relations with his wife and children. He stated that he did not feel like working and could not eat or sleep. Plaintiff saw his family physician and was prescribed Valium once between December and January 1997.

Between October 1996 and February 1997, Plaintiff continued to share confidential conversations about his marriage with Defendant and Defendant continued to listen to his friend's concerns. Plaintiff, in conversation with

Defendant, brought up the idea that maybe Plaintiff's wife was having an affair. Defendant dismissed the idea of an affair. Plaintiff then asked his wife whether she was having an affair, and she denied it. During marriage counseling, Plaintiff's wife again denied that she was having an affair.

The relationship between Plaintiff and the Defendant changed abruptly on February 4, 1997, when Plaintiff discovered that Defendant was having an affair with Plaintiff's wife. In or around December 1996, Plaintiff began to suspect that his wife and Defendant were having an affair. Plaintiff hired a private investigator to conduct surveillance of his wife. During this time frame, Plaintiff's wife moved out of the marital bedroom into the basement of the marital home. The private investigator placed a hidden camera in her basement bedroom. On February 4, 1997, Plaintiff removed the videotape from the camera, drove to his parent's home, and watched the videotape for the first time with his mother. The videotape showed the Defendant and Plaintiff's wife engaged in sexual relations in her bed in the basement of the marital home. The evidence revealed that, at the time of the videotaped sexual liaison, Plaintiff and his children were asleep upstairs in the marital home.

Plaintiff testified that, as a result of seeing the taped evidence of infidelity, he experienced severe emotional distress. He said that, upon viewing the videotape, he was "sick to his stomach." He testified that he felt betrayed and that he found his wife's and the Defendant's conduct to be "disgusting, sickening, and reprehensible." Plaintiff testified further that, as a result of the Defendant's affair and betrayal, he suffered depression and did not feel like working. He stated that he experienced sleep disturbance and weight loss of approximately 19 pounds following the discovery of the affair. Plaintiff testified that after he learned of the affair, his wife and the Defendant persisted in their illicit relations publicly, which made him feel worse. Plaintiff's marriage counselor testified that, when she saw Plaintiff after February 7, 1997, he was extremely sad, depressed, distraught, and agitated by the betrayal. After February 7, 1997, Plaintiff did not see a psychiatrist or other mental health professional, other than the marriage counselor.

Plaintiff testified further that his business was affected by the Defendant's adulterous affair with his wife. Plaintiff had been a successful entrepreneur who managed six food service businesses and a retail business in family-owned corporations, and he also had engaged in sales. After February 7, 1997, however, he lost his desire to work and was distracted. He missed some sales appointments and was not highly productive. Plaintiff moved down from being the number one salesman to being number three in sales in the family business. He failed to pay some sales taxes and the businesses were assessed penalties by the state. Plaintiff and his father testified that Plaintiff failed to timely

renew a business lease option, which cost the family business $80,000 to renegotiate. Plaintiff's wages were not reduced during this time period, and he did not sustain any monetary wage loss.

During the time Plaintiff was dealing with the issues above, he was also involved in his divorce and custody case. Plaintiff's wife did not move out of the marital residence right away. Therefore, Plaintiff testified that he struggled to maintain some stability in the marital household for his children, while his wife lived downstairs in their home. Plaintiff was awarded custody of his two children pending and after the divorce.

## II. *Procedural History*

On April 9, 1997, Plaintiff filed his Motion for Judgment against Defendant claiming $100,000 in damages for intentional infliction of emotional distress, or in the alternative $100,000 in damages for negligent infliction of emotional distress. Thereafter, on May 23, 1997, Defendant filed his Grounds of Defense. (The legal question presented here could have been heard pre-trial on a demurrer. However, the demurrer was waived by the filing of a substantive grounds of defense to the Motion for Judgment.)

On March 19, 1998, Defendant filed a Motion to Dismiss the case for failure to state a cause of action. Defendant's Motion was essentially a demurrer to the pleadings. The Motion was scheduled to be heard on the March 27, 1998, docket, four days before trial. However, the Calendar Control Judge removed Defendant's Motion to Dismiss from the March 27th docket after concluding that the Motion was not timely filed.

The jury trial commenced on March 30, 1998. At the close of Plaintiff's evidence, Defendant made a Motion to Strike. In accordance with *Brown v. Koulizakis*, 229 Va. 524 (1985), the Court took the motion under advisement and briefs were submitted.

## III. *Analysis of the Defendant's Motion to Strike the Evidence and to Set Aside the Verdict*

"When the sufficiency of a plaintiff's evidence is challenged upon a motion to strike the evidence at the conclusion of the plaintiff's case-in-chief, the trial court should in every case overrule the motion where there is any doubt on the question." *Brown v. Koulizakis*, 229 Va. 524, 531 (1985), *citing Williams v. Vaughan*, 214 Va. 307, 309 (1973). A Motion to Strike should be granted only in cases in which it is conclusively apparent that plaintiff has no proven cause of action against defendant. *Brown*, 214 Va. at 531, *citing Leath*

*v. Richmond, Fredericksburg and Potomac RR.*, 162 Va. 705, 710 (1934). In *Brown*, the Supreme Court instructs the trial court to take a motion to strike under advisement, allow the case to proceed to verdict, and address the legal questions post-verdict on motions. *Id.*

In this case, the court took the Defendant's motion to strike under advisement and allowed the case to proceed to verdict. The jury returned a verdict for the Plaintiff in the amount of $60,000. For the reasons set forth below, the Court grants Defendant's Motion to Strike, vacates the verdict in favor of the Plaintiff, and enters judgment in favor of the Defendant.

## A. *Plaintiff's Action is Barred by the Virginia Heart Balm Statute*

Defendant contends that Plaintiff's causes of action are barred by the Virginia Heart Balm Statute, Va. Code § 8.01-220, because they stem from Defendant's adultery or criminal conversation with Plaintiff's wife. The Virginia Hear Balm Statute bars causes of action for alienation of affection, breach of promise to marry, criminal conversation, and seduction. Defendant argues that the Virginia Heart Balm Statute bars not only the specific causes of action listed, but it also bars all other causes of action for the same basic set of wrongs. Defendant contends that Plaintiff's claims for intentional or negligent infliction of emotional distress are essentially claims for alienation of affection stemming from Defendant's affair with Plaintiff's wife. Defendant asserts further that both of Plaintiff's claims are attempts to evade, through creative pleading, the Virginia Heart Balm Statute. Therefore, Defendant argues that, since Plaintiff's claims arise out of Defendant's adultery or criminal conversation with Plaintiff's wife, they are barred by the Virginia Heart Balm Statute.

The act of adultery[1] continues to be a ground for divorce in Virginia. Va. Code § 20-91(a)(1). Prior to enactment of the Virginia Heart Balm Statute, adultery also had civil consequences. Alienation of affection was a cause of action for the robbing of a spouse of the conjugal affection, society, fellowship, and comfort which inheres in marriage, by a third person engaging in adulterous sexual relations with the other spouse. *See, e.g., Bowen v. Pernell*, 190 Va. 389 (1950); *accord Young v. Young* 236 Ala. 627, 184 So. 187, 190 (1938). Criminal conversation was a cause of action derived from adultery and based upon the sexual intercourse of an outsider with husband or

---

[1] Adultery is a crime in Virginia. Va. Code § 18.2-365; *see also* Suddarth v. Slane, 539 F. Supp. 612 (W.D. Va. 1982).

wife. Criminal conversation was a cause of action which entitled the aggrieved spouse to recover monetary damages from the paramour. *Id.*

Plaintiff contends that his cause of action for intentional or negligent infliction of emotional distress against the Defendant, his wife's paramour, is not barred by the statute. Plaintiff submits that the elements of the cause of action for alienation of affection, criminal conversation, intentional infliction of emotional distress, or negligent infliction of emotional distress are different. *See Rafferty v. Scott,* 756 F.2d 335 (4th Cir. 1985). Therefore, in response to the Defendant's arguments, Plaintiff contends that his causes of action are for intentional torts other than alienation of affection or criminal conversation.

The Court must analyze the substance of the Plaintiff's Motion for Judgment in the context of the Virginia Heart Balm Statute, regardless of the label put upon it. *Weaver v. Union Carbide Co.,* 180 W. Va. 556, 378 S.E.2d 105 (1989). The Motion for Judgment labels the causes of action as intentional infliction of emotional distress or negligent infliction of emotional distress. Plaintiff asserts in his Motion for Judgment that the Defendant conducted an adulterous affair with Plaintiff's wife. (Motion for Judgment "MFJ" ¶¶ 3-5.) As a result of the affair, Plaintiff alleges that his twenty-five year marriage failed (MFJ ¶¶ 5a-c) and he was humiliated by the open appearance of the Defendant with his wife in the community. (MFJ ¶¶ 5c, 6.) Finally, Plaintiff alleges that he "has suffered emotionally and psychologically as a result of the Defendant's duplicitous and insensitive behavior and as a result of the consequences of the continuing relationship between the Defendant and Plaintiff's wife." (MFJ ¶ 7.)

The foregoing analysis of the Plaintiff's Motion for Judgment and his evidence demonstrate that Plaintiff's claim is in effect a claim for alienation of affections. Plaintiff's sincere complaint is that his wife and his friend betrayed him by engaging in an affair and destroying his family. The legislature has made a judgment in the Virginia Heart Balm Statute that adultery resulting in alienation of affections is not actionable in tort for money damages. *Cf. Strock v. Presnell,* 527 N.E.2d 1235, 1242 (Ohio 1988); *Wilson v. Still,* 819 P.2d 714, 716 (Okla. 1991). Therefore, in accordance with the policies underlying the Virginia Heart Balm Statute, the Court holds that Plaintiff's claim is not actionable as intentional or negligent infliction of emotional distress and his claims are barred as a matter of law. Va. Code § 8.01-220.

## B. *Intentional Infliction of Emotional Distress*

Defendant contends that Plaintiff's evidence is insufficient as a matter of law to establish a claim for intentional infliction of emotional distress. Defendant contends that the Plaintiff must prove his case by clear and convincing evidence. *Womack v. Eldridge*, 215 Va. 338, 342 (1974). Intentional infliction of emotional distress requires that: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) the wrongdoer's conduct caused the emotional distress; and (4) the emotional distress was severe. *Id.*

Defendant argues that the Plaintiff's evidence does not meet the requirements of the claim for intentional infliction of emotional distress in several respects.

### 1. *Element One: The Wrongdoer's Conduct Was Intentional or Reckless*

Defendant argues that in an action for intentional infliction of emotional distress, the Plaintiff must prove first that he acted intentionally or recklessly. *See Womack*, 215 Va. at 342. Defendant submits that Plaintiff has no proof that defendant had an affair with Plaintiff's wife for the specific purpose of injuring Plaintiff. In *Womack*, the court held that the requirement of intentional conduct by the Defendant is satisfied "where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct or knew or should have known that emotional distress would likely result." *Id.* at 342. In the instant case, the Defendant knew or should have known that emotional distress would likely result to Plaintiff if he learned about his wife and close friend's sexual affair. Defendant intentionally misled the Plaintiff by encouraging him to pursue marriage counseling while at the same time maintaining a covert affair with Plaintiff's wife in Plaintiff's home. Under these circumstances, the Court holds that there is a sufficient allegation and proof of the intentional conduct requirement to withstand the Defendant's Motion to Strike.

### 2. *Element Two: The Conduct Was Outrageous and Intolerable*

Defendant contends that his conduct does not meet the second element because it was not legally "outrageous" as a matter of law. He acknowledges that having a sexual affair with another person's spouse is morally wrong; however, he contends that the conduct in and of itself does not give rise to civil

liability for tort. Additionally, Defendant submits that the remainder of Plaintiff's evidence shows nothing more than verbal harassment, conduct which the Virginia Supreme Court refused to term "outrageous" as a matter of law. *See Russo v. White*, 241 Va. 23, 28-29 (1991). Therefore, Defendant argues that the morally wrong conduct of adultery proven by the Plaintiff is not actionable as "outrageous" behavior.

It is for the court to determine, in the first instance, whether the Defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. *See Womack*, 215 Va. at 342. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability. *Id.*

The outrageous conduct element requires that the Defendant's conduct be considered "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *Id.* The essence of the plaintiff's claim here is for alienation of affection and criminal conversation. He complains that his wife and his friend betrayed him by engaging in an adulterous affair. He was morally wounded and hurt by their conduct. As stated above, the Virginia Heart Balm Statute bars a lawsuit for alienation of affection and criminal conversation in tort. The couching of this claim as an action for intentional or negligent infliction of emotional distress will not circumvent the operation of the Virginia Heart Balm Statute. In light of the Virginia Heart Balm Statute, the Court holds that the Plaintiff's evidence is legally insufficient to meet the stringent requirements to sustain the element of "outrageous and intolerable conduct" required by law.

### 3. *Element Three: The Wrongdoer's Conduct Caused the Plaintiff Emotional Distress*

The third element of intentional infliction of emotional distress is the causal connection between the wrongdoer's conduct and the emotional distress. The testimony and pleadings make clear that Defendant's affair with Plaintiff's wife caused Plaintiff various emotional problems. Therefore, the element of causation is satisfied.

### 4. *Element Four: Plaintiff Suffered Severe Emotional Distress*

The fourth element of intentional infliction of emotional distress is that the wrongdoer's conduct must have caused Plaintiff to suffer severe emotional distress. To establish the fourth element of severe emotional distress, the

Supreme Court of Virginia in *Russo v. White*, 241 Va. at 28, required that the Plaintiff allege an objective physical injury caused by the stress, that she sought medical attention, that she had been confined to her home or hospital, or that she had lost income. The distress must be of the kind that no reasonable person could be expected to endure it. *Id* at 27.

Defendant contends that Plaintiff did not suffer the "severe emotional distress" required under *Russo* for an intentional infliction of emotional distress claim. Defendant contends that Plaintiff's evidence failed to show that he suffered such severe emotional distress. Viewed in a light most favorable to the Plaintiff, the evidence reveals that Plaintiff was understandably depressed and felt betrayed after learning of the affair in February 1997. Plaintiff testifies that he felt "sick and disgusted," depressed, and lethargic. He did not see a mental health professional or doctor[2] for his depression.[3] He testified that he suffered some sleep disturbance and weight loss after viewing the videotape. He was depressed before and after he saw the videotaped infidelity. He testified that he was not expecting his wife to ask for a divorce in October 1996.

Plaintiff's discovery of the affair in February 1997 made matters worse. He testified that he was distracted at work and that he did not go to work as much as he had before the family turmoil started. Plaintiff's father testified that Plaintiff cost his family business $80,000 when he failed to pay attention to work and let a business lease option expire. Plaintiff failed to file sales tax forms on time, which resulted in penalties being assessed by the state against the family business. He missed sales appointments because he was depressed. In sum, Plaintiff's damages in effect are the pain associated with a troubling divorce.

---

[2] Dr. William B. Zuckerman, the custody evaluator used by the parties in their divorce and custody suit, testified about evaluating Plaintiff in connection with the custody case. He observed that Plaintiff had an appropriate degree of anger and impairment of judgment as a result of the divorce. He testified Plaintiff suffered a "moderate level of stress." He acknowledged that Plaintiff continued to function in his role as a parent and business manager. Her recommended to the Court in Plaintiff's divorce case that the Plaintiff receive custody of his children.

[3] Plaintiff was seeing Ms. Irene Gaffney, a licensed professional counselor for marriage counseling with his wife between December 1996 and February 1997. Ms. Gaffney was a marriage counselor helping the parties initially with their marital difficulties. After the decision was made for a divorce, Ms. Gaffney helped Plaintiff to adjust to the imminent divorce and increased child rearing duties. She was not treating Plaintiff for depression associated with these events.

The legal question is whether Plaintiff's reaction to these events are the type of "severe emotional distress" that "no reasonable person could be expected to endure it." *Womack*, 215 Va. at 342; *Russo v. White*, 241 Va. at 27-28. It is common for individuals going through a divorce to experience a range of emotions and physical changes associated with the collapse of their family. There is no doubt that Plaintiff has experienced some situational depression and anger as a result of this double betrayal by his wife and friend. Plaintiff's stress resulted in an inability to sleep and weight loss. Plaintiff was never hospitalized, nor did he suffer any physical harm from the Defendant. As unfortunate as Plaintiff's circumstances are, Plaintiff's emotional upheaval cannot be characterized a severe emotional distress that no reasonable person can be expected to endure. Many individuals who experience the trauma of divorce suffer from situational depression and the hardship that Plaintiff is enduring. This lawsuit cannot mend a broken heart or vindicate morality. As Plaintiff has not introduced any evidence to show that his stress is more severe than that suffered by the numerous individuals who are also going through a divorce, the Plaintiff has not proven a cause of action for intentional infliction of emotional distress.

## C. *Negligent Infliction of Emotional Distress*

Defendant submits that to recover for negligent infliction of emotional distress, the Plaintiff must allege and prove that he suffered a physical injury. Defendant asserts that "in the absence of accompanying physical harm or wanton and willful conduct, emotional distress damages are not recoverable." *Carstensen v. Chrisland Corp.*, 247 Va. 433 (1994). As there is no evidence of physical harm to the Plaintiff, Defendant argues that the Court should grant Defendant's Motion to Strike on Plaintiff's count for negligent infliction of emotional distress.

In *Hughes v. Moore*, 214 Va. 27, 34 (1973), the Supreme Court of Virginia held that "where conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking there can be no recovery for emotional disturbance alone." In this case, Plaintiff did not suffer from any physical harm. Therefore, the Court holds that there is insufficient evidence to support a claim for negligent infliction of emotional distress.

## IV. *Conclusion*

Accordingly, for the reasons set forth above, Defendant's Motion to Strike is granted, the verdict for the Plaintiff is set aside, and judgment as a matter of law is entered in favor of the Defendant.