## CIRCUIT COURT OF ROCKINGHAM COUNTY

Peggy Allen

v.

Seventy-Seven Acres
and Robert Hensley

March 24, 1999

Case No. CH98-11532

BY JUDGE JOHN J. MCGRATH, JR.

In this case, the plaintiff has filed a two-count Motion for Judgment alleging an intentional infliction of emotional distress (Count I) and a violation of the Virginia Fair Housing law (Count II).

The gravamen of the plaintiff's Motion for Judgment is that she and her late husband rented an apartment from the defendants in 1989. She alleges that shortly after her husband's death in 1993, Mr. Robert L. Hensley, the managing partner of the partnership, began making sexual advances upon her. She alleges that in or about 1997, she began to refuse defendant's sexual advances and, by 1998, alleges that the defendant had threatened to evict her from the property if she did not submit to his further sexual requests. On February 10, 1998, the defendants had a summons for unlawful detainer issued against the plaintiff. Judgment was entered for the landlord on that summons in the General District Court, and the matter was appealed to this Court.

After appeal to this Court and the completion of discovery, the plaintiff in the unlawful detainer filed a Motion for Summary Judgment requesting possession of the property and back rent. Although in her pleadings in the unlawful detainer action, Ms. Allen had made reference to her eviction being more in the nature of a "lover's quarrel" than a true case of nonpayment of

rent, this Court on June 21, 1998, granted the plaintiff's Motion for Summary Judgment and ordered Ms. Allen to vacate the premises forthwith and forfeited $1,210.00 of her appeal bond to the plaintiff as payment for back rent and costs. A writ of possession was issued by the Clerk of the Circuit Court on June 22, 1998, and was executed by the Sheriff on June 26, 1998. At no time during the unlawful detainer action did Ms. Allen raise a violation of Virginia Fair Housing Act as a defense to the unlawful detainer action.

## I. *Sufficiency of the Pleading of the Intentional Infliction of Emotional Distress*

In the instant proceeding, the defendant has filed a Demurrer to both Counts of the Motion for Judgment and has also filed a Plea in Bar of Res Judicata/Collateral Estoppel to Count II. The basis of the defendants' Demurrer to Count I (intentional infliction of mental distress) is based upon the assertion that the Motion for Judgment does not meet the pleading requirements set forth by the Supreme Court in *Russo v. White*, 241 Va. 23 (1991), for cases which allege the intentional infliction of mental anguish.

The seminal case in Virginia which recognizes the tort of the intentional infliction of mental distress is *Womack v. Eldridge*, 215 Va. 338 (1974). In that case, the Supreme Court laid down the pleading and proof requirements for cases seeking recovery for the intentional infliction of mental distress. In *Russo v. White*, 241 Va. 23 (1991), the Supreme Court affirmed a trial court's granting of a demurrer in a case of alleged intentional infliction of mental anguish. In so doing, the Court reiterated the *Womack* test and interpreted the *Womack* test to require a plaintiff to plead and prove by clear and convincing evidence four prongs of the test, i.e.: (1) the wrongdoer's conduct is intentional or reckless; (2) the conduct is outrageous and intolerable; (3) the alleged wrongful conduct and emotional distress are causally connected; and (4) the distress is severe. *Id.* at p. 26.

In *Russo*, the case before the Supreme Court did not involve the adequacy of pleadings concerning the first or third prong of the *Womack* test. In fact, the Supreme Court also conceded for the sake of argument and decision that the Motion for Judgment satisfied the second prong of the *Womack* test, that the conduct was outrageous and intolerable. The ruling of the Supreme Court was based solely upon the adequacy of the pleadings *vis a vis* the fourth prong of the *Womack* test, whether the emotional distress was so severe that no reasonable person could endure it.

The Motion for Judgment in *Russo v. White* alleged that the plaintiff, among other things, had suffered "severe emotional distress"; was "nervous"; "could not sleep"; "experienced stress and its physical symptoms"; "withdrew from activities"; and was "unable to concentrate at work." The Supreme Court noted that it was not bound by conclusory allegations and ruled that the pleading was not sufficient under the fourth part of the *Womack* test because it did not make allegations such as (1) objective physical injury; (2) that plaintiff sought medical attention; (3) that plaintiff was confined at home or in a hospital; or (4) that she had "lost income." *Id.* at p. 28.

In the case at bar, in addition to the general conclusory pleadings such as referred to by the Supreme Court as being insufficient in *Russo v. White, supra*, the plaintiff in this action alleged in Paragraph 23 of her Motion for Judgment that because of the severe emotional distress, she was required to "seek emergency treatment" and that she was "placed on medications."

In light of the allegations of the plaintiff having sought medical treatment and having been placed on medications by a physician, this Court rules that for the purposes of ruling on a Demurrer, she has sufficiently pleaded a cause of action under the *Womack* doctrine as interpreted by the Court in *Russo v. White, supra*.

## II. *Plea of Res Judicata as to Count II*

Defendant partnership and the defendant, Hensley, who was a general partner in the partnership, raise a plea of res judicata or collateral estoppel to Count II of the Motion for Judgment which is premised upon an alleged violation of the Virginia Fair Housing Law.

Recognizing that an action under the Virginia Fair Housing Law is a separate cause of action from the prior detainer action, the defendants claim benefit of the doctrine of collateral estoppel. The theory of their argument is that when this Court, on June 21, 1998, entered summary judgment for the partnership in the unlawful detainer action, it had determined that the premises were to be vacated and that the current plaintiff owed back rent for the premises. Thus the defendants argue, for the purposes of the current litigation, it has been finally adjudicated between the parties that her reason for eviction was the nonpayment of rent, and therefore, there cannot be any alleged discrimination under the Virginia Fair Housing Act.

Relying upon the doctrine of collateral estoppel (see e.g., *Bill Greever v. Tazewell Nat'l Bank*, 256 Va. 250 (1998); *Angstadt v. Atlantic Mut. Ins. Co.*, 249 Va. 444 (1995); and *Bates v. Deavers*, 214 Va. 667 (1974)), the

defendants argue that since in the detainer action "this court found the eviction to be within Seventy-Seven Acres' legal rights and accordingly directed plaintiff to vacate the premises" (Defendant's Memorandum of Law in Support of Plea of Res Judicata at p. 11), that plaintiff cannot now assert a cause of action under the Virginia Fair Housing Act.

Although now a creature of statute, detainer is an old common law form of action which was designed to be summary in nature and to provide a quick and efficient way of delivering possession of real property to one having a rightful claim of possession. As the Supreme Court of Virginia noted long ago in *Davis v. Mayo*, 82 Va. 97 (1886):

> The remedy for a forcible or unlawful entry or detainer was designed to protect the actual possession, whether rightful or wrongful, and to afford summary redress and restitution ... .
>
> When the plaintiff shows that he has been turned out of possession forcibly, or by one having no right to do so, he has made out his right to restitution, which cannot be defeated by any evidence in regard to the title or right of possession. The judgment has only the effect of placing the parties *in statu quo*; it settles nothing even between them in regard to the title or right of possession, it being declared by statute that "no such judgment shall bar any action of trespass or ejectment between the same parties, nor shall any such judgment or verdict be conclusive in any such future action of the facts therein found." Barton Law Pr. 372; *Olinger v. Shepherd*, 12 Gratt. 462; *Power & Kellog v. Tazewells*, 25 *Id.* 786; *Pannill v. Coles*, 81 Va. 380; Code 1873, ch. 130, § 6.

*Id.* at p. 99.

This was a reiteration of the earlier ruling of the Supreme Court in *Olinger v. Shepherd*, 53 Va. (12 Gratt.) 462 (1855), in which the Supreme Court stated:

> The remedy for a forcible or unlawful entry was designed to protect the actual possession, whether rightful or wrongful, against the unlawful invasion and to afford summary redress and restitution.

*Id.* at 471.

Similarly, it has been held in analogous situations that a judgment in an unlawful detainer action does not have a collateral estoppel effect in

subsequent litigation between the parties. *Cf. Harrison v. Manson,* 95 Va. 593 (1898). See also monograph behind *Dobson v. Culpeper,* 64 Va. (23 Gratt.) 352 (1873), "the remedy for an unlawful or forcible entry was designed to protect the actual possession, whether rightful or wrongful, against unlawful invasion and to afford summary redress and restitution." Virginia Reports Annotated, p. 518.

The current Virginia version of creating the legal procedure for a summons of unlawful detainer (§§ 8.01-124 to 8.01-130) recognizes within its own structure that the proceeding is meant to be a summary proceeding to establish immediate possession of real estate and not a forum in which the parties can seek to litigate a vast array of other more substantive claims regarding the property or possession thereof. For example, in § 8.01-130 it is provided:

> No judgment in an action brought under the provision of this article
> shall bar any action of trespass or ejectment between the same parties,
> nor shall any such judgment or verdict be conclusive in any such
> future action of the facts therein found.

Although possibly not applicable to this case in a technical sense because this is not an action, an ejectment, or trespass, this limitation placed by the Legislature is a clear indication that adjudication of unlawful detainer is to settle merely the right of immediate possession.

When this Court ordered the plaintiff herein to deliver possession to the defendant in this action, the Court of necessity found only that she had not paid the rent which she had contracted to pay and that because of that failure to pay a rent, the owner had a superior right to immediate possession of the property. There was no adjudication in that proceeding of any other matter such as whether the owner-landlord had violated the Virginia Fair Housing Law.

Therefore, the Plea in Bar raised by both defendants on the grounds of res judicata and collateral estoppel is hereby overruled.

### III. *Defendants' Demurrer to Cause of Action Based on the Virginia Fair Housing Act*

Both parties agree that the issue of whether "sexual harassment" amounts to discrimination on the basis of sex within the meaning of the Virginia Fair Housing Law is a matter of first impression in the Commonwealth. In support

of their respective arguments, both the plaintiff and defendants argue by analogy from federal and state cases generally decided in the employment context.

Plaintiff argues that there is a well-established body of federal law holding that sexual harassment amounts to and is considered the functional equivalent of sexual discrimination. See, e.g., *Meritor Savings Bank v. Vincent*, 477 U.S. 577 (1986); *Beardsley v. Webb*, 30 F.3d 524 (4th Cir. 1994); *Katz v. Dole*, 709 F.2d 251 (4th Cir. 1983); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406 (10th Cir. 1987); and *Garber v. Saxon Business Products*, 552 F.2d 1032 (4th Cir. 1977). Plaintiff further points out that even in the employment context, the decisions of the Virginia Supreme Court in *Lockhart v. Commonwealth Educ. Sys. Corp.* and *Wright v. Donelley & Co.*, 247 Va. 98 (1994), establish that in the employment context, forms of on-the-job sexual harassment can be equated under the Virginia Human Rights Act with sexual discrimination.

Defendants, on the other hand, argue in the employment context in Virginia "sexual harassment" is not the functional equivalent of sexual discrimination and cannot be the basis of an action under the Virginia Human Rights Act. They cite the Circuit Court opinion in *Stallings v. Leeds, Inc.*, 37 Va. Cir. 469 (City of Martinsville 1996), in which the Circuit Court held that in the context of the Virginia Human Rights Act, sexual harassment was not the equivalent of sexual discrimination. That Circuit Court opinion has been cited with approval by at least one federal court in declining to extend Virginia's employment law to cover sexual harassment as a subset of sexual discrimination. *Hott v. VDO Yazaki Corp.*, 922 F. Supp. 1114 (W.D. Va. 1996). See, e.g., *Douglas v. Dabney S. Lancaster Community Coll.*, 990 F. Supp. 447 (W.D. Va. 1997); cf. *Dickson v. Denney's, Inc.*, 957 F. Supp. 792 (E.D. Va. 1996).

However, the Federal Courts which decline to equate sexual harassment to sexual discrimination under Virginia law are generally premised on the abstention or deference doctrine which recognizes that the Federal Courts should refrain when possible from interpreting state law in advance of the state courts having an opportunity to rule on the issue. See, e.g., *Harrison v. Multi-Channel TV Cable Co.*, 196 U.S. App. LEXIS 4858 (4th Cir. 1996); *Spence v. General Elec. Co.*, 894 F.2d 651, 657 (4th Cir. 1990) (federal courts should use caution in extending state law to a point beyond which a state's highest court has not taken it).

In order to determine whether the form of sexual harassment alleged in this case (i.e., landlord demanding sexual favors of female tenants as a *quid pro quo* for female tenant's being permitted to continue to reside in rented

premises), it is necessary to look at the Virginia Fair Housing Act in some detail. First, the broad declaratory purpose of the Act setting forth the fact that it is an exercise of a police power of the Commonwealth provides that it is the policy of the Commonwealth:

> To provide for fair housing throughout the Commonwealth to all its citizens regardless of race, color, religion, national origin, sex, elderliness, familial status or handicap, and to that end to prohibit discriminatory practices with respect to residential housing by any person or group of persons in that the peace, health, safety, prosperity, and general welfare of all inhabitants of the Commonwealth may be protected and insured.

It is hard to envision a more emphatic expression of a desire to use the full police power of the state to outlaw sexual, racial, and other types of invidious discrimination to the maximum extent possible under the law. Moreover, the definitional section of the Act (§ 36-96.3) lays out nine separate types of discriminatory practices which are barred. It is interesting to note the structure of the first two sections of this section, which read as follows:

> A. It shall be an unlawful discriminatory housing practice for any person:
> 1. To refuse to sell or rent after the making of a bona fide offer or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, national origin, sex, elderliness, or familial status.
> 2. To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in the connection therewith to any person because of race, color, religion, national origin, sex, elderliness, or familial status ... .

It appears that § A(1) is designed to cover refusals to sell or rent based on prohibited discriminatory criteria. Whereas § A(2) prohibits any discrimination based on sex relating to the "terms, conditions, or privileges of ... rental of a dwelling or in the provision of services or facilities in the connection therewith." It would appear that this section is drafted broadly enough to encompass within the term sexual discrimination as set forth in this statute demands which the landlord puts upon certain tenants for sexual favors based upon the fact that they are females of a certain age or appearance. In short, it

is hard to think of a more patently discriminatory practice than what has been alleged in this case. Moreover, the Workers' Compensation Act is instructive on this issue. When the Legislature intends to exclude sexual "harassment" from the coverage of remedial legislation, it certainly knows how to do so. In § 65.2-301(c) of the Code, the Legislature provided:

> (c) Nothing in this title shall create a remedy for sexual harassment nor shall this title bar any action at law that might otherwise exist by an employee who is sexually harassed.

No such provision excluding sexual harassment is found in the Virginia Fair Housing Act.

Therefore, this Court believes that the allegations of sexual harassment or the *quid pro quo* renting or altering the terms and conditions of rental agreements for sexual reasons, if proven, would be a form of sexual discrimination prohibited by the statute. Therefore, the defendants' Demurrer to Count II of the Motion for Judgment is hereby denied.

The Clerk is directed to send attested copies of this Opinion and Order to Terry Lynn, Esq., counsel for plaintiff, and to Daniel L. Fitch, Esq., counsel for defendants.