PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2007

RICHARD C. WEIDMAN,

Plaintiff - Appellant,

v.

EXXON MOBIL CORPORATION; CLARION ELLIS JOHNSON;
JEFFREY WOODBURY; VICTORIA MARTIN WELDON; STEPHEN D. JONES;
KENT DIXON; F. BUD CARR; DANIEL WHITFIELD; JEREMY SAMPSELL;
GERARD MONSIVAIZ; MEGHAN HASSON,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Claude M. Hilton, Senior
District Judge.  (1:13-cv-00501-CMH-JFA)

Argued:  October 28, 2014          Decided:  January 8, 2015

Before GREGORY, FLOYD, and THACKER, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published
opinion.  Judge Gregory wrote the opinion, in which Judge Floyd
and Judge Thacker joined.

**ARGUED**: Richard C. Weidman, Great Falls, Virginia, Appellant Pro
Se.  Thomas Patrick Murphy, HUNTON & WILLIAMS, LLP, McLean,
Virginia, for Appellees.  **ON BRIEF**: Arthur E. Schmalz, Ryan M.
Bates, HUNTON & WILLIAMS LLP, McLean, Virginia, for Appellees.

GREGORY, Circuit Judge:

Pro se Plaintiff Richard Weidman sued his former employer, Exxon Mobil Corporation ("ExxonMobil"), and ten ExxonMobil employees, alleging that he was fired in retaliation for reporting illegal pharmacy practices, which caused him to suffer a heart attack and emotional distress. Weidman, still pro se, appeals the district court's dismissal of his fraud, intentional infliction of emotional distress, personal injury, and wrongful discharge claims. Weidman furthermore challenges the district court's denial of his motion to remand the case to state court. For the reasons below, we affirm the district court's denial of Weidman's motion to remand and dismissal of all but one of his tort claims. We hold Weidman has sufficiently stated a claim for wrongful discharge against ExxonMobil.

I.

In March 2013, Weidman filed suit in Fairfax County Circuit Court against his former employer, ExxonMobil, and ten ExxonMobil employees. These employees include: (1) Clarion Ellis Johnson, Medical Director; (2) Jeffrey Woodbury, Vice President for Safety, Security, Health and Environment and Johnson's supervisor; (3) Victoria Martin Weldon, U.S. Director of Medicine and Occupational Health and Weidman's supervisor from February 2010; and (4) Stephen Jones, whose title is not

2

given but who reported directly to Johnson and supervised Weldon. The complaint also named four individuals who investigated Weidman's reports of retaliation: Daniel Whitfield, Kent Dixon, Jeremy Sampsell, and F. Bud Carr. Lastly, the suit named Meghan Hasson and Gerard Monsivaiz, who worked in the Human Resources Department, though Monsivaiz is only mentioned in the case caption. Weidman is a Virginia resident, as are three of the defendants: Hasson, Monsivaiz, and Sampsell.

Weidman worked as Senior Physician in ExxonMobil's Fairfax, Virginia office from 2007 until his termination in January 2013. Upon being hired, Weidman was required to read ExxonMobil's Standards of Business Conduct ("handbook"). This handbook detailed employee standards with respect to reporting suspected violations of law and policy. It also guaranteed non-retaliation by ExxonMobil against employees for making such reports. Weidman claims that he attended yearly meetings where videos were played showing Rex Tillerson, CEO of ExxonMobil, guaranteeing that employees would never suffer retaliation for reporting violations.

Weidman's complaint alleges that in 2009 he discovered ExxonMobil had been operating illegal pharmacies in multiple states, and had also illegally stockpiled large quantities of medication in its Fairfax, Virginia office, as well as in other

3

clinics. He asserts many senior managers were aware of these illegal activities, including Johnson, Weldon, and Jones. Weidman further contends that Jones requested he "participate in a scheme" to distribute stockpiled medication to ExxonMobil employees in Virginia. In January 2010, Weidman says he informed Johnson he would not obtain a New Jersey medical license to work at a clinic in that state as long as it was operating an illegal pharmacy. In response to this, Weidman alleges Johnson became "physically intimidating" toward him.

Weidman claims he reported "violations of the law by the Medical Department," in response to which "Johnson initiated a malicious campaign of retaliation." The campaign included "attempts to humiliate, discredit, and punish Weidman," including "continuously humiliat[ing] Weidman before [his] colleagues," falsely classifying him as a poor performer, and "ma[king] statements that clearly implied that Weidman was a pedophile" at an office gathering. Shortly thereafter, Weidman reported via email to senior management his belief that Johnson was retaliating against him for prior complaints, and that ExxonMobil was violating pharmacy laws in several states. ExxonMobil proceeded to conduct what Weidman describes as a "sham" investigation into his allegations. Weidman says Whitfield and Dixon, two investigators assigned to the matter,

falsely concluded that Johnson had not harassed Weidman and that the pharmacies were legal.

On an unspecified date after the investigation into Weidman's report, Weidman says the Medical Department designated him as a "poor performer" and required him to participate in a performance improvement plan. In September 2011, Weidman claims to have received an email from ExxonMobil's Legal Department stating ExxonMobil pharmacies had been in violation of multiple state laws. Weidman says he then sent another email to senior managers informing them that Johnson and other members of the Medical Department had retaliated against him, and that there had been a cover up of these actions during the first investigation. A second investigation commenced, led by Sampsell and Carr. During the investigation, Carr allegedly admitted to Weidman that ExxonMobil had been operating illegal pharmacies for years, and that Johnson had permitted their operation.

Under the performance improvement plan, which lasted for over a year, Weidman participated in meetings with Weldon, which Hasson also attended. Weidman contends the purpose of the meetings was not to improve his performance, but to overburden him with the creation of new tasks meant to cause his failure to perform. In late October 2012, Weidman alleges he complained to Human Resources about the "oppressive and unjustifiable"

5

meetings. He was particularly concerned about a meeting scheduled just days before he was to undergo surgery. The meeting occurred on October 24, 2012, and was "hostile and confrontational." Weidman claims to have had a heart attack during the meeting "as a direct result of the stress which Weldon maliciously inflicted upon him." In mid-December, ExxonMobil extended Weidman's performance improvement plan. At the next meeting in January 2013, Weidman's employment was terminated, allegedly for failure to cooperate with the plan.

Subsequently, Weidman filed his complaint asserting four causes of action: (1) fraud, because Appellees allegedly retaliated against him despite representations made to the contrary in the handbook and by CEO Tillerson in yearly videos; (2) intentional infliction of emotional distress; (3) "personal injury" of "irreparable damage to his heart"; and (4) wrongful discharge. Weidman pursues this last count under two theories, that his termination violated Virginia's public policy and was also a breach of an implied unilateral contract established by ExxonMobil's employee handbook.

Appellees removed the case to the U.S. District Court for the Eastern District of Virginia, where they also moved to dismiss the case under Federal Rule of Procedure 12(b)(6). Weidman moved to remand the case to state court. The district

court dismissed all of Weidman's claims and denied his motion to remand.

II.

In appealing the district court's denial of his motion to remand, Weidman raises a threshold jurisdictional issue that we address de novo. See Mayes v. Rapoport, 198 F.3d 457, 460 (4th Cir. 1999). Weidman named three non-diverse defendants in his complaint, but the district court found it could properly retain subject matter jurisdiction under the "fraudulent joinder" doctrine. Normally, complete diversity of citizens is necessary for a federal court to exercise diversity jurisdiction, meaning the plaintiff cannot be a citizen of the same state as any other defendant. Id. at 464. However, the fraudulent joinder doctrine provides that diversity jurisdiction is not automatically defeated by naming non-diverse defendants.[1] The district court can "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants." Id. at 461. It can retain jurisdiction upon the non-moving party showing either

---

[1] Contrary to its name, the "fraudulent joinder" doctrine requires neither fraud nor joinder. "In fact, it is irrelevant whether the defendants were 'joined' to the case or originally included as defendants," as the doctrine is "applicable to each defendant named by the plaintiff either in the original complaint or anytime prior to removal." Mayes, 198 F.3d at 461 n.8.

7

that the plaintiff committed outright fraud in pleading jurisdictional facts, or that "there is <u>no possibility</u> that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." <u>Mayes</u>, 198 F.3d at 464; <u>see also</u> <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 233 (4th Cir. 1993) ("A claim need not ultimately succeed . . . [as] only a possibility of a right to relief need be asserted.").

We agree with the district court that Weidman, a Virginia resident, cannot succeed in any of his claims against the non-diverse defendants – Monsivaiz, Sampsell, or Hasson – in state court. First, Monsivaiz is only mentioned in the complaint caption; there is no factual detail at all to support any claims against him. Of the two remaining non-diverse defendants, Weidman has not in any way alleged that Sampsell or Hasson made materially false statements on which Weidman reasonably relied, that their actions were connected to his heart attack, or that they engaged in outrageous or intolerable conduct. These claims fail in any case, for reasons described in Part III.

The only plausible claim against Hasson and Sampsell is the wrongful discharge claim. Appellees argue that Sampsell or Hasson cannot be liable for wrongful discharge because Weidman named only ExxonMobil in the paragraph of his complaint describing this count. Even assuming Weidman brings suit against all Appellees on this claim, there simply are not enough

8

facts to connect the actions of Sampsell and Hasson to his allegedly wrongful discharge. Virginia law recognizes individual employee liability for wrongful discharge for public policy reasons. See VanBuren v. Grubb, 733 S.E.2d 919, 923 (Va. 2012). Still, Sampsell is described as one of two investigators assigned to the second investigation into Weidman's complaints. He is mentioned only once in a paragraph that focuses on actions taken not by Sampsell, but by his co-investigator. Similarly, the most alleged against Hasson is that she attended Weidman's performance improvement meetings.

Appellees have satisfied their burden of showing there is "no possibility" of Weidman succeeding in any of his tort claims against any of these non-diverse defendants. Thus, we affirm the district court's denial of Weidman's motion to remand.


III.

Moving to the district court's dismissal of Weidman's tort claims, we review a grant of a motion to dismiss for failure to state a claim de novo. E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011). A complaint "must contain sufficient facts to state a claim that is 'plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A formulaic recitation of the elements of a cause of action" is not enough. Robertson v.

9

*Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). In making this determination, we "accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences in favor of the plaintiff." *DuPont*, 637 F.3d at 440.

Under this standard, we review Weidman's claims of fraud, intentional infliction of emotional distress, personal injury, and wrongful discharge in turn.

A.

To establish a fraud claim, Weidman must show: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1999) (quoting *Bryant v. Peckinpaugh*, 400 S.E.2d 201, 203 (Va. 1991)). Additionally, he is required to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). These circumstances are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 590 (2d ed. 1990)).

10

We agree with the district court that Weidman failed to sufficiently plead his fraud claim against Appellees. Weidman only vaguely referred to CEO Tillerson and unnamed "members of the Human Resources and Law Departments" in his complaint. J.A. 22 (Compl. ¶ 25). He does not specify when or how many times the representations occurred, but alleges that "[a]t the time these representations were made . . . the parties who made them knew" that reporting violations "could result in actions taken against those who reported [them]." J.A. 22 (Compl. ¶ 26). Absent additional details, the district court properly dismissed Weidman's fraud claim.

B.

Weidman further appeals the district court's dismissal of his claim of intentional infliction of emotional distress. This claim requires that: (1) the wrongdoer's conduct was "intentional or reckless"; (2) the conduct was "outrageous and intolerable"; (3) "there was a causal connection between the wrongdoer's conduct and the emotional distress"; and (4) the resulting distress was severe. Womack v. Eldridge, 210 S.E.2d 145, 148 (Va. 1974).

Weidman's allegations against Appellees – that he was labeled a poor performer and impliedly called a pedophile – while unsettling, are nonetheless insufficient as a matter of law to establish "outrageous and intolerable" conduct. Id.

11

Weidman simply failed to set forth facts rising to the level of conduct "so outrageous . . . as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Russo v. White, 400 S.E.2d 160, 162 (Va. 1991); see, e.g., Baird ex rel. Baird v. Rose, 192 F.3d 462, 472-73 (4th Cir. 1999) (finding sufficiently pled facts of outrageous conduct in case of teacher intentionally humiliating student she knew suffered from depression); Lewis v. Gupta, 54 F. Supp. 2d 611, 621 (E.D. Va. 1999) (defendant conspiring to falsely accuse plaintiff of rape, resulting in plaintiff's imprisonment for 529 days); Delk v. Columbia/HCA Healthcare Corp., 523 S.E.2d 826, 833 (Va. 2000) (defendants' knowing failure to inform plaintiff she was exposed to HIV).

Weidman argues that the "outrageous conduct" requirement set forth in Womack is not required when the harm complained of results in definite physical injury. This argument fails for several reasons. First, Weidman raises this issue for the first time on appeal. See Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998) ("[I]ssues raised for the first time on appeal generally will not be considered."). More fundamentally, the Supreme Court of Virginia wrote in Womack that a plaintiff must show only negligent, as opposed to willful or wanton conduct, "where emotional disturbance is accompanied

12

by physical injury," but did so in reference to the tort of negligent infliction of emotional distress. 210 S.E. 2d at 147. When Weidman points to Womack for the principle that he is not required to show conduct going "beyond all possible bounds of decency," Russo, 400 S.E.2d at 162, he is actually trying to reframe his claim as one for negligent, rather than intentional, infliction of emotional distress, which we cannot allow.

Therefore, Weidman is required to allege "outrageous and intolerable" conduct, and we agree with the district court that he has not done so.

## C.

Count Three of Weidman's complaint is a "personal injury" cause of action against Appellees. Weidman states in a single paragraph: "Due to the intentional and malicious acts of the Defendants towards the Plaintiff that the Defendants knew, or should have known, would have injured the Plaintiff, the Plaintiff suffered irreparable damage to his heart." J.A. 23 (Compl. ¶ 33). In dismissing this count, the district court treated Weidman's heart attack as an injury for which the Virginia Workers' Compensation Act provides the exclusive remedy.[2] We instead affirm dismissal of this count for failure

---

[2] The Virginia Workers' Compensation Act ("VWCA") is triggered when an employee suffers an "injury by accident arising out of and in the course of the employment." Va. Code (Continued)

13

to sufficiently state a claim. See Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("[W]e may affirm a judgment for any reason appearing on the record."). A well-pled complaint must offer more than "labels and conclusions," or "naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (brackets and internal quotation marks omitted). Weidman's one-sentence allegation that, "due to the intentional and malicious acts . . . the Plaintiff suffered irreparable damage to his heart," J.A. 23 (Compl. ¶ 33), is exactly the kind of "naked assertion" that is insufficient to state a claim.

D.

Weidman's wrongful discharge claim against ExxonMobil is presented in two parts. According to Weidman, his termination for refusing to participate in an allegedly illegal pharmacy operation violated Virginia public policy. He also argues that the anti-retaliation provision in ExxonMobil's handbook

---

Ann. § 65.2-101. This does not include "[i]njuries resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events." Morris v. Morris, 385 S.E.2d 858, 865 (Va. 1989). Had Weidman pled that his heart attack was the final result of repetitive stress or cumulative events, as opposed to a discrete event, his claim may not have been barred by the VWCA. Nevertheless, his own complaint does not support this argument. See J.A. 21 (Compl. ¶ 22) ("During the [performance improvement] meeting, Weidman suffered a heart attack as a direct result of the stress which Weldon maliciously inflicted upon him." (emphasis added)).

14

constituted an implied unilateral contract that ExxonMobil breached by firing him for reporting violations of state pharmacy laws.

Virginia adheres to a strong presumption that employment is at will, meaning employment lasts for an indefinite term and can be terminated for almost any reason. See VanBuren, 733 S.E.2d at 921. However, there is an exception to this doctrine for at-will employees who claim to have been discharged in violation of public policy. Bowman v. State Bank of Keysville, 331 S.E.2d 797, 801 (Va. 1985). The Supreme Court of Virginia has recognized three situations in which a litigant may show her discharge violated public policy: (1) where an employer fired an employee for exercising a statutorily created right; (2) when the public policy is "explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy"; and (3) "where the discharge was based on the employee's refusal to engage in a criminal act." Rowan v. Tractor Supply Co., 559 S.E.2d 709, 711 (Va. 2002).

The district court determined that Weidman failed to identify a statute whose public policy ExxonMobil violated in firing him. We disagree and find Weidman sufficiently stated a claim that his termination violated the public policy of sections 54.1-3310 and 54.1—3435 of the Virginia Code. These

15

statutes make it unlawful for anyone to practice pharmacy or to engage in wholesale distribution of prescription drugs without a license. Va. Code Ann. §§ 54.1-3310, 54.1—3435. While not part of Virginia's criminal code, a violation of these sections leads to criminal penalties. See id. § 54.1-111 (making a violation a Class 1 misdemeanor[3]). Therefore, refusal to practice pharmacy without a license should be treated as refusal to engage in a criminal act.

Weidman has pled sufficient factual detail to adequately state this claim. He writes in his complaint that he was wrongfully discharged for "refusing to participate in illegal pharmacy distribution activities . . . contraven[ing] the public policy interest of the Commonwealth of Virginia." J.A. 24 (Compl. ¶ 38). He furthermore describes:

> Jones also requested that Weidman participate in a scheme involving a Virginia pharmacy, in which the pharmacy would distribute the stockpiled medication to Exxon Mobil employees, but Weidman refused to do so and informed Jones that this would be against the law.

J.A. 14 (Compl. ¶ 8). In this way, Weidman has clearly described the circumstances of his refusal to engage in an act of criminal consequences.

---

[3] A Class 1 misdemeanor is punishable by "confinement in jail for not more than twelve months and a fine of not more than $2,500, either or both." Va. Code Ann. § 18.2-11(a).

16

Appellees argue that this claim cannot survive because Weidman failed to cite the statute in his complaint. However, any deficiency in this regard is merely technical. Weidman did provide the citations in his reply to Appellees' Motion to Dismiss. See Mem. Opp'n Mot. Dismiss 17, ECF No. 13; see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (explaining that "a complaint, especially a pro se complaint, should not be dismissed summarily unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" (internal quotation marks omitted)). Especially since Weidman's complaint identified his refusal to "participate in illegal pharmacy distribution activities" as contravening Virginia public policy, his failure to provide specific citations – which he in fact provided in his responsive pleadings – cannot be considered failure to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (ellipsis omitted).

We therefore find that Weidman has sufficiently stated a wrongful discharge claim under Virginia's public policy exception to its at-will employment doctrine. As a result, although we have previously recognized that Virginia law allows "[e]mployers [to] make unilateral offers even to at-will employees . . . in employee handbooks," we need not reach the

issue.  <u>Jensen v. Int'l Bus. Machs. Corp.</u>, 454 F.3d 382, 387 (4th Cir. 2006).

IV.

For the foregoing reasons, we reverse the district court's dismissal of Weidman's wrongful discharge claim against ExxonMobil and remand the case for further proceedings consistent with this opinion.  We affirm the district court in all other respects.

<u>AFFIRMED IN PART,</u>
<u>REVERSED IN PART,</u>
<u>AND REMANDED</u>

18