**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 20-1790**

—————————

ALKESH TAYAL,

        Plaintiff – Appellant,

v.

THE BANK OF NEW YORK MELLON; SELECT PORTFOLIO SERVICING, INC.;
EQUITY TRUSTEES, LLC,

        Defendants – Appellees.

—————————

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  Anthony J. Trenga, District Judge.  (1:19-cv-00509-AJT-JFA)

—————————

Argued:  January 25, 2022                    Decided:  February 24, 2022

—————————

Before MOTZ, AGEE, and WYNN, Circuit Judges.

—————————

Affirmed by unpublished per curiam opinion.

—————————

Christopher Edwin Brown, THE BROWN FIRM PLLC, Alexandria, Virginia, for
Appellant.  Donald Richard Pocock, NELSON MULLINS RILEY & SCARBOROUGH,
LLP, Winston-Salem, North Carolina; Robert Ryan Michael, BWW LAW GROUP, LLC,
Richmond, Virginia, for Appellees.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this suit stemming from a loan modification agreement negotiated to resolve a past foreclosure, Alkesh Tayal appeals from the district court's: (1) denial of his motion to remand to state court; (2) dismissal of foreclosure trustee Equity Trustees, LLC ("Equity" or the "trustee") under Rule 12(b)(6); and (3) grant of summary judgment in favor of The Bank of New York Mellon ("BONY") and Select Portfolio Servicing, Inc. ("SPS"; collectively, the "Lenders"). For the following reasons, we affirm the district court's judgment in full.

I.

A.

In 2005, Tayal refinanced a prior mortgage and borrowed $920,000 represented by a promissory note originally payable to Countrywide Bank, N.A., but which later was transferred to BONY. To secure repayment, Tayal executed a deed of trust ("DOT") encumbering a piece of property located in Dunn Loring, Virginia.

Twelve years later, SPS (as the servicer of the loan on behalf of BONY) sought to foreclose on the property based on Tayal's default in repayment.[1] On September 28, 2017,

---

[1] "Virginia is a non-judicial foreclosure state." *Horvath v. Bank of N.Y., N.A.*, 641 F.3d 617, 623 n.3 (4th Cir. 2011). That means, "in the event of default on a deed of trust, the trustee 'shall forthwith declare all the debts and obligations secured by the deed of trust at once due and payable and may take possession of the property and proceed to sell the same at auction' without any need to first seek a court decree." *Id.* (quoting Va. Code Ann. § 55-59(7) (recodified at Va. Code Ann. § 55.1-320(7)).

SPS conducted a foreclosure sale where BONY was the highest bidder. BONY received title through a substitute trustee's deed and obtained insurance covering the property.

Soon thereafter, Tayal brought suit challenging the sale. The Parties engaged in settlement discussions and eventually entered into a loan modification agreement ("LMA") to resolve their dispute. The LMA—which Tayal and SPS both signed—called for monthly payments of $7,217.76, beginning in March 2018. These payments were comprised of two amounts: (1) $4,060.41 in monthly principal and interest; and (2) $3,157.35 in "Estimated Monthly Escrow," which included an amount for the insurance policy BONY purchased after the 2017 foreclosure sale.[2] The escrow amount was subject to "be[ing] adjusted periodically in accordance with applicable law," meaning "the total monthly payment may change accordingly." J.A. 183. Following execution of the LMA, BONY conveyed title back to Tayal. SPS then took action to remove BONY's insurance coverage for the property.

The subsequent insurance cancellation resulted in a partial premium refund, which SPS credited to Tayal's escrow account in the form of a $4,139.62 surplus payment. In April 2018, SPS performed an escrow analysis consistent with applicable federal

---

[2] Specifically, the LMA provided:

[Tayal] has agreed to establish an escrow account to pay for property taxes and homeowner's insurance and pay a monthly escrow payment in the initial amount of $3,157.35. . . . [Tayal] acknowledges that the payments attributable to insurance and taxes are determined by the state taxing authorities and insurance companies and therefore, are subject to change from time to time. [Tayal] will be notified of any changes.

J.A. 183.

3

regulations and adjusted Tayal's Estimated Monthly Escrow due to the change of insurance, reducing his total payment to $4,933.59 per month. In accordance with the LMA, SPS informed Tayal that the new amount would be effective June 1, 2018.

However, Tayal has not made a full payment on the note since executing the LMA. He paid $4,800 at signing, which was credited as a partial payment for March 2018. He submitted no payments in April or May 2018. On May 21, 2018, SPS declared the account to be in default, provided Tayal with notice, and informed him of his right to cure. He failed to do so. In the years following, Tayal made one partial payment of $4,060.41, which he submitted in August 2018.

According to Tayal, a dispute arose with the Lenders almost immediately following the execution of the LMA regarding the amount of his total monthly payment. He asserted that he was not responsible for BONY's insurance premiums while it held title to the property. Further, Tayal contended that he had been overcharged for his Estimated Monthly Escrow payments for March, April, and May 2018.

One year after the LMA went into effect—and ten months after SPS issued the notice of default—Equity scheduled another foreclosure sale. Tayal responded by notifying the trustee that he disputed the amount the Lenders claimed was due. Equity declined to cancel the sale, and Tayal filed suit in Virginia state court in an effort to prevent the foreclosure. The Lenders removed the case—with Equity's (the only nondiverse defendant) consent—to the district court, asserting complete diversity under the theory that Equity was fraudulently joined.

4

Other than contesting removal, only two of Tayal's claims have any bearing on this appeal. First, he asserted that Equity was "responsible for [his] attorney's fees" for this litigation because it "fail[ed] to cancel [the foreclosure] sale when presented with a legitimate dispute by the borrower," thereby violating its duty of impartiality.[3] Opening Br. 3. Second, Tayal alleged that the Lenders breached the DOT by charging him for BONY's insurance premiums.

### B.

Upon removal, Tayal filed a motion to remand. Equity moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court denied Tayal's motion, holding the "original complaint fail[ed] to state any cognizable claims by which [Tayal] could possibly recover against Equity." *Tayal v. The Bank of N.Y. Mellon f/k/a/ The Bank of N.Y., as Tr.*, No. 1:19-cv-509 (AJT/JFA), 2019 WL 11252971, at *4 (E.D. Va. Dec. 2, 2019) J.A. 165. Tayal had offered "only bare allegations" that Equity's "refusal to cancel the planned foreclosure sale and failure to seek the assistance of the Courts violated [its] duty to remain impartial." *Id.* And "there [was] no allegation that the foreclosure sale was ever completed." *Id.* Thus, the court concluded that Equity was fraudulently joined and "not a 'real and substantial' party to this action," *id.* at *5, ignored its nondiverse citizenship for purposes of Tayal's motion to remand, and dismissed his claims against it.

---

[3] Specifically, Tayal argues that Equity owes him attorney's fees because it did not cancel the sale until he hired counsel and brought suit.

5

C.

After discovery, the Lenders moved for summary judgment. Relevant here, the district court granted their motion as to Tayal's breach of contract claim, finding that the LMA "specifically and unambiguously require[d]" Tayal to pay the disputed amount of $7,217.76 "each month unless it's changed," and "the uncontradicted evidence" showed "that amount was the amount to be paid until it was reduced" in June 2018. J.A. 378. And because there was "no evidence to establish that the escrow was not reviewed and adjusted in accordance with the applicable statutory statutes and the regulations," the court found there was "nothing that would create a genuine issue of material fact with respect to whether the [Lenders] breached the contract." J.A. 379.

The district court entered judgment in the Lenders' favor. Tayal filed a timely notice of appeal. This Court has jurisdiction under 28 U.S.C. § 1291.

II.

Tayal presents two issues for our review. First, he argues the district court improperly denied his motion to remand after concluding that Equity was fraudulently joined. Second, Tayal suggests the district court erred in granting the Lenders' motion for summary judgment on his breach of contract claim. We address each contention in turn.

A.

When confronted with a motion to remand, district courts need only consider "real and substantial parties to the controversy" in determining whether complete diversity exists and must set aside "nominal or formal parties." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458,

6

460–61 (1980). Thus, under the doctrine of fraudulent joinder, a district court may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). A removing party alleging fraudulent joinder must show "either that the plaintiff committed outright fraud in pleading jurisdictional facts, or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218 (4th Cir. 2015) (citation omitted).

We review questions of subject matter jurisdiction, including issues "relating to the propriety of removal and 'fraudulent joinder,'" de novo. *Mayes*, 198 F.3d at 460. The party that sought removal bears the burden of proof, meaning all legal and factual issues must be construed in favor of the non-removing party—in this case, Tayal. *Id.* at 464.

Neither the Lenders nor Equity suggests that Tayal "committed outright fraud" in his pleadings by including the trustee in an effort to destroy complete diversity. *Weidman*, 776 F.3d at 218. Rather, they maintain that "there is *no possibility* that" he can "establish a cause of action against [Equity] in [Virginia] state court." *Id.* In response, Tayal suggests that he has a viable claim against the trustee for breaching an implied fiduciary duty of impartiality by refusing to cancel the foreclosure sale at his request. Because there is no authority to support that assertion, we affirm the district court's determination that Equity was fraudulently joined.

"The powers and duties of a trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which he acts." *Powell v. Adams*,

7

18 S.E.2d 261, 262–63 (Va. 1942). Additionally, the Supreme Court of Virginia has recognized that trustees also "owe[] both the debtor and the creditor certain implied fiduciary duties." *Crosby v. ALG Tr., LLC*, 822 S.E.2d 185, 190 (Va. 2018). Among these is the common law duty of impartiality.

It is axiomatic that a trustee is "the agent of both debtor and creditor," meaning "[i]t is incumbent upon him to act toward each with perfect fairness and impartiality." *Powell*, 18 S.E.2d at 263. Simply put, "the requirement of impartiality means that a trustee under a deed of trust must balance the conflicting positions of the creditor and debtor such that a benefit to one cannot come at a disproportionate expense of the other." *Crosby*, 822 S.E. 2d at 190; *see also, e.g.*, *Cromer v. De Jarnette*, 51 S.E.2d 201, 204 (Va. 1949) (observing that a trustee's failure to remain impartial by selling the property at a price that was "so grossly inadequate as to shock the conscience" may create "a presumption of fraud," rendering the sale invalid); *Rohrer v. Strickland*, 82 S.E. 711, 712 (Va. 1914) ("[I]f it appears that going on with the sale at the appointed time will result in a great sacrifice of the property, it is [the trustee's] positive duty to adjourn the sale." (quotation marks and citation omitted)); *Rossett v. Fisher*, 52 Va. (11 Gratt.) 492, 498–99 (1854) (holding that a trustee should not "permit the urgency of the creditors to force the sale under circumstances injurious to the debtor at an inadequate price.").

According to Tayal, this principle means trustees have "an affirmative duty to seek assistance from the court to remove any cloud on title if there is *any doubt* or uncertainty as to the debts secured *or the amounts thereof*." Opening Br. 26. In support, Tayal cites

8

the Supreme Court of Virginia's decision in *Hudson v. Barham*, 43 S.E. 189 (Va. 1903), which held,

> If a trustee in pais, with power to make sale of real estate for the payment of debts, attempts to make such sale while . . . there is any doubt or uncertainty as to the debts secured or the amounts thereof, . . . a court of equity, *on a bill filed by the debtor, secured creditor, subsequent incumbrancer, or other person having an interest*, will restrain the trustee until these impediments to a fair sale have by its aid been removed as far as it is practicable to do so.

*Id.* at 190 (emphasis added). But *Hudson* imposes no duty on a trustee to proceed on its own to seek judicial relief simply because the debtor and creditor dispute the amount of the debt. To make this inferential leap, Tayal directs our attention to *Bremer v. Bitner*, 44 Va. Cir. 505 (Va. Cir. 1996), a twenty-five-year-old circuit court case from Fairfax County, Virginia. There, the court found a trustee violated its duty of impartiality by conducting a foreclosure sale despite having been previously made aware of a dispute between the creditor and debtor as to the amount owed. The court enjoined the sale, finding that the "trustee ha[d] a duty to seek the aid and direction of a court of equity before foreclosing if the amount of the debt is uncertain" and that it was "obligated to seek such aid and direction on [its] own motion." *Id.* at *6. In support of this freewheeling duty, the court cited *Morriss v. Virginia State Ins. Co.*, 90 Va. 370 (1893), a decision the Supreme Court of Virginia had disclaimed as having no precedential value more than ninety years earlier, *see Wilson v. Wall*, 38 S.E. 181, 182 (Va. 1901).

We have scoured the Supreme Court of Virginia's nearly 250 years of opinions and can find no authority to support Tayal's broad construction of a trustee's implied fiduciary obligations in the circumstances of this case. Though presented under the guise of the long-

9

recognized duty of impartiality, he is in truth asking this Court to impose one of *partiality*—unconditionally favoring him as the unpaying debtor at the expense of all others. Indeed, a careful review of the case law fully supports the district court's conclusion that there is "no possibility" that a Virginia state court would find such a duty exists—much less that Equity breached it here. *Weidman*, 776 F.3d at 218.

To begin, the Supreme Court of Virginia has emphatically and repeatedly rejected such an untethered responsibility on the part of the trustee. In *Hudson*, decided over a century ago, the court made clear that "it is not the duty of a trustee in every case to invoke the aid of a court of equity before making a sale of the trust subject." 43 S.E. at 190. Indeed,

> to hold that it is, or that if he fails to do so an injunction will be awarded at the instance of any party in interest, . . . would be to impose serious delays, involving costs and expense in the execution of deeds of trust, which the law never contemplated, and without promoting the interests of either creditor or debtor. It is only when the aid of a court of equity is *necessary* that it ought to be applied for, and it is only in such a case that its aid will be extended. If there are no *real impediments* in the way of a fair execution of the trust, then its aid is not necessary[.]

*Id.* (emphases added).

The Supreme Court of Virginia recently affirmed this limited construction in *Young-Allen v. Bank of Am., N.A.*, 839 S.E.2d 897 (Va. 2020). There, the court made clear that "Equity was not required to postpone or cancel the foreclosure sale based solely on the alleged breach of the deed of trust, especially when [the plaintiff] failed to plead that she could cure her default and prevent the foreclosure sale from occurring." *Id.* at 902. And here, similarly, Tayal's original complaint contained no allegation that he informed Equity

10

he could cure his default, further defeating any argument he may have had that Equity breached any duty it owed him.

In summary, Tayal presents no controlling authority to contradict this established view of the duty of impartiality. Indeed, this Court has already described *Bremer*'s assessment of this issue—which as a state circuit court decision has no precedential value, *see McGinnis v. McGinnis*, 821 S.E.2d 555, 559 (Va. Ct. App. 2018)—as an outlier that "diverges from current Virginia law." *Willner v. Dimon*, 849 F.3d 93, 113 n.6 (4th Cir. 2017). And we do not depart from that disavowal here. Therefore, we affirm the district court's holding that Equity could not have breached its duty of impartiality by failing to cancel the foreclosure sale under the circumstances presented by this case.

But even if such a duty did exist—and Tayal could establish that Equity breached it—we would still affirm the district court's decision because he failed to allege that the trustee's conduct damaged him in any way. To state a claim for breach of a fiduciary duty, a plaintiff must allege "the requisite duty, breach, and resulting damage." *Carstensen v. Chrisland Corp.*, 442 S.E.2d 660, 666 (Va. 1994); *see also Crosby*, 822 S.E.2d at 189 ("[A]n action for the breach of contractually implied duties is still contractual in nature, notwithstanding the fact that such a breach may sound in tort."). Here, it is uncontested that Equity cancelled the foreclosure sale after Tayal filed this suit. Thus, he was not divested of title, despite the fact that he has not made a single full payment since executing the LMA

11

(and has made no payment whatsoever since August 2018).[4] Nor has he suffered any other tangible loss.

Instead, as Tayal emphasizes throughout the record and his briefs before this Court, he is only seeking to recover his attorney's fees against Equity for bringing the instant suit—no more, and no less. "Virginia follows the American rule on attorney's fees, under which generally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant." *Bolton v. McKinney*, 855 S.E.2d 853, 855 (Va. 2021) (cleaned up). "The purpose of the rule is to avoid stifling legitimate litigation by the threat of the specter of burdensome expenses being imposed on an unsuccessful party." *Id.* (cleaned up).

As the Lenders and Equity observe, Tayal points to no statutory or contractual provision authorizing him to recover attorney's fees against Equity for bringing the instant suit. Nor does he direct the Court to any binding authority suggesting that he can recover such fees in the absence of compensable damages. Instead, the only case Tayal cites to support his position is, again, *Bremer*, where the court awarded the borrower its attorney's fees for bringing suit against the trustee to enjoin the foreclosure sale after having informed it of the dispute with the creditor. For the reasons just stated, we owe no deference to a decision no Virginia court would follow. Nor do we find it persuasive. The *Bremer* court

---

[4] Tayal has directed us to no precedential decision—and we have found none—where a plaintiff has recovered under a duty of impartiality claim in the absence of a foreclosure sale where the debtor has suffered no actual damages due to the trustee's breach.

made no reference to any statutory or contractual provision allowing it to award fees as damages, presumably because there are none. And it similarly gave no consideration to Virginia's application of the American Rule.

Because Tayal cannot recover against Equity, the district court did not err in finding that the trustee was fraudulently joined and denying the motion to remand.[5]

B.

Turning to Tayal's breach of contract claim, we review the district court's grant of summary judgment in favor of the Lenders de novo. *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In doing so, we must reassess whether there are "any genuine issues of material fact" and determine "whether the district court erred in applying the substantive law." *Id.* Once more, we view the facts in the light most favorable to the non-moving party—again, Tayal. *Id.*

"The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Schuiling v. Harris*, 747 S.E.2d 833, 836 (Va. 2013) (citation omitted). Here, the Parties' intent could not have been clearer: Tayal was obligated to pay BONY $7,217.76 each month under the LMA. This included an agreed-upon initial Estimated Monthly Escrow payment of $3,157.35, which was subject to revision—and indeed was revised mere months after ratification.

---

[5] Nor, by extension, did the district court err in granting Equity's motion to dismiss. *See Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 617 (4th Cir. 2015) (stating that this Court reviews grants of motions to dismiss for failure to state a claim de novo).

Regardless of whether Tayal believed that amount was correctly determined—and whether he was obligated to pay for BONY's insurance coverage while it owned the property—he expressly contracted to pay it until it was "adjusted . . . in accordance with applicable law." J.A. 183. He didn't. Nothing in the record contradicts or casts doubt on that conclusion. Therefore, Tayal breached the LMA—and the DOT by extension—as soon as he failed to make the first full payment (for the amount in which he agreed to pay) in March 2018. And "a party who commits the first breach of a contract is not entitled to enforce the contract." *Horton v. Horton*, 487 S.E.2d 200, 203 (Va. 1997). Therefore, we discern no error in the district court's award of summary judgment in favor of the Lenders on Tayal's breach of contract claim.

III.

For the foregoing reasons, we affirm the district court's judgment in full.

*AFFIRMED*

14